**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| JOSE A. VIROLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.  17-776-MPT |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION**</u>

**I.      INTRODUCTION**

This action arises from the denial of plaintiff's claim for Social Security Disability

benefits.  On November 14, 2012, plaintiff filed an application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act (the "Act").[1]  In his application,

plaintiff alleged he was disabled, as of September 5, 1986, due to mental retardation,

anxiety, nervousness, speech problems, and poor communication.[2]  His claims were

denied initially and upon reconsideration.[3]  Thereafter, plaintiff requested a hearing

before an Administrative Law Judge ("ALJ"), which was held on March 25, 2015.[4]  On

November 13, 2015, ALJ William Kurlander issued a decision denying plaintiff's claims.[5]

Subsequently, on December 12, 2015, Plaintiff requested a review of the hearing

---

[1] D.I. 16 at 2.
[2] *Id.*
[3] *Id.* at 1.
[4] *Id.* at 2.
[5] *Id.*

decision.[6]  The Appeals Council denied the review on April 13, 2017.[7]  He then filed a timely appeal with this court.  Presently before the court are the parties' cross motions for summary judgment.  For the reasons that follow, the court will grant defendant's motion for summary judgment.

## II.    BACKGROUND

Plaintiff was born in Puerto Rico on September 5, 1986, which plaintiff alleges as the onset of his disability.[8]  He is a Spanish speaking United States citizen.[9]  He attended high school in Ponce, Puerto Rico,  where he completed an Individualized Education Program ("IEP") in 2004.[10]  Plaintiff alleges he was placed in a pre-vocational program because he was unable to meet the requirements for regular curriculum participation.[11]  He claims due to mental retardation, severe paranoia, and schizoaffective disorder, he is unable to work.[12]  He has no past relevant work.[13]

### A.    Evidence Presented

From 2006 to 2012, plaintiff was under the care of Dr. Migueline Grant Gonzales.[14]  Dr. Gonzales diagnosed plaintiff with mild mental retardation, finding his condition as permanent.[15]  Dr. Gonzales believed plaintiff was completely limited in his

---

[6] *Id.* at 3.
[7] *Id.*
[8] D.I. 16 at 2, 3.
[9] *Id.* at 3.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at 4.
[15] *Id.*

daily routine and incapable of physical and/or mental effort.[16]  From 2012-2014, plaintiff

saw Ms. Gloria Diaz, his primary care provider, for his impairments.[17]  In November

2012, Ms. Diaz noted plaintiff was fast paced, used loud speech, had an anxious and

euphoric mood, and his behavior was agitated and compulsive.[18]

On January 29, 2013, Dr. Frederick Kurz, a psychologist, performed a one-time

evaluation by administering the Test of Non-verbal Intelligence-Fourth Edition, a fifteen-

minute test.[19]  Plaintiff attained a raw score of 17 placing his nonverbal cognitive skills at

an IQ of 76, borderline range.[20]  Dr. Kurz diagnosed him with borderline intelligence.[21]

Dr. Kurz believed plaintiff would have "moderate" limitations relating to other people,

daily activities, carrying out instructions under ordinary supervision, sustaining work

performance, and coping with pressures of ordinary work.[22]  In February 2013, plaintiff

had the same persisting symptoms as noted in November 2012, and Ms. Diaz

recommended psychological counseling.  Later, she referred him to a psychiatrist and

neurologist.[23]

From March 2013 to August 2013, plaintiff treated with Mr. Kurt Rodriguez of

Christiana Counseling.[24]  On March 7, 2013, Mr. Rodriguez conducted an initial exam

and noted plaintiff was withdrawn, picked at his fingers, and minimally verbal.[25]  Mr.

---

[16] *Id.*
[17] *Id.* at 8.
[18] *Id.* at 9.
[19] *Id.* at 11.
[20] *Id.*
[21] *Id.*
[22] *Id.* at 12.
[23] *Id.* at 9.
[24] *Id.* at 4.
[25] *Id.*

Rodriguez diagnosed plaintiff with moderate mental retardation and anxiety disorder.[26]

On March 16, 2013, Mr. Rodriguez tried to administer a mini mental exam, but plaintiff was unfocused and unable to answer any questions.[27]  On April 15, 2013, Dr. Gloria Crespo performed an initial exam and observed plaintiff had poor eye contact, smelled his fingers, and played with his hands.[28]  Dr. Crespo recommended cognitive behavioral therapy.[29]  After this exam, plaintiff attended multiple cognitive behavioral therapy sessions with Dr. Crespo.[30]  Based upon her observations, Dr. Crespo opined plaintiff was mentally retarded.[31]  After various visits, she concluded that plaintiff's mental and intellectual deficits were severe and limiting.[32]

In June 2014, plaintiff started treatment with Dr. Patricia Lifrak, a psychiatrist.[33] During her exam, Dr. Lifrak noted that plaintiff's judgment and insight was limited, and he evidenced cognitive delays.[34]  Dr. Lifrak subsequently diagnosed plaintiff with a mood disorder.[35]  On June 25, 2014, Dr. Crespo completed a mental impairment questionnaire, finding him disabled from competitive employment.[36]  Subsequently, Dr. Crespo diagnosed him with adjustment disorder with mixed features and mental retardation.[37]  Dr. Crespo stated plaintiff was unable to meet competitive standards for

---

[26] *Id.*
[27] *Id.*
[28] *Id.* at 5.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.* at 6.
[33] *Id.* at 7.
[34] *Id.*
[35] *Id.*
[36] *Id.* at 10.
[37] *Id.*

even unskilled work due to his intellectual, cognitive, and psychological impairments.[38]
She also determined that plaintiff would have severe difficulties interacting with the
public and maintaining socially appropriate behavior because he is highly suspicious of
others or displayed inappropriate behaviors that are child-like.[39]

Plaintiff was admitted to the Rockford Center from August 7, 2014 to August 18,
2014.[40]  He was transferred from Wilmington Hospital after a 24-hour commitment due
to paranoia and positive homicidal ideation towards many people.[41]  Upon admission,
Dr. Afzal, a psychiatrist at Rockford, diagnosed plaintiff with bipolar disorder and chronic
mental illness.[42]  Plaintiff was treated for ten days, placed on mental health medications,
and his symptoms improved.[43]  Upon discharge, Dr. Afzal diagnosed him with
schizophrenia.[44]  Plaintiff was discharged to follow up with Dr. Lifrak for care.[45]

On September 6, 2014, plaintiff was seen at Wilmington Hospital for altered
mental state and suicidal ideations.[46]  There was concern about physical aggression,
cognitive disability, and medication compliance.[47]  Thereafter, plaintiff was discharged to
follow up with his psychiatrist.[48]  On September 24, 2014, plaintiff saw Dr. Lifrak.[49]  After
an exam, plaintiff remained non-verbal, passively cooperated, had poor eye contact and

---

[38] *Id.*
[39] *Id.*
[40] *Id.* at 6.
[41] *Id.*
[42] *Id.* at 7.
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.* at 8.

flat effect.[50]  Dr. Lifrak diagnosed plaintiff with schizoaffective disorder.[51]

In 2013, plaintiff's claim for benefits was evaluated by state agency consultants, Carlene Tucker-Okine, Ph.D. and Christopher King, Psy. D.[52]  Dr. Tucker-Okine believed plaintiff was moderately limited in multiple areas, including the ability to understand and remember detailed instructions, maintain attention and concentration, complete a normal workday and work week without interruptions from psychologically based symptoms and set realistic goals.[53]  She believed he was limited to simple tasks for work.  Dr. King affirmed the opinion of Dr. Tucker-Okine.[54]

### B.    Hearing Testimony

### 1. Plaintiff's Testimony

At the hearing on March 25, 2015, plaintiff provided no testimony.[55]  When questioned, he did not cooperate or provide any verbal responses.[56]  Plaintiff stated, during the hearing, that he did not understand.[57]  Plaintiff would not consent to the ALJ's use of a Spanish language interpreter.[58]  Counsel expressed concern over plaintiff's ability to testify.[59]  In lieu of plaintiff, his mother, Carolina Virola Ruiz, testified.[60]  She testified plaintiff attended special education classes, entered the first grade at the age of

---

[50] *Id.*
[51] *Id.*
[52] *Id.* at 12.
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] D.I. 21 at 2.
[59] D.I. 16 at 12.
[60] *Id.* at 13.

ten, remained in fifth grade until the age of fifteen, and did not graduate high school.[61]

Ms. Ruiz explained she and plaintiff had lived in the United States for two and a half

years.[62] She further testified that her son never worked and could not work because he

was depressed and thought everybody was ready to attack him.[63] Ms. Ruiz stated her

son did not carry his own wallet or handle money.[64]

She explained plaintiff suffered from depression, anxiety, and phobia and has no

friends nor socializes with family members.[65] She testified he is unable to communicate

properly with a group of people, as well as his psychiatrist.[66] He has problems with

anger and hears voices.[67] Ms. Ruiz testified during the day, he spends his time

watching basketball on television, staying in his room, and listening to music.[68] He does

not want to leave his room.[69] Ms. Ruiz further noted that her son does not have a

driver's license, is unable to use a computer, and cannot perform any chores.[70] She

noted that he takes prolonged showers and must be prompted to stop.[71]

---

[61] D.I. 21 at 2.
[62] *Id.* at 3.
[63] D.I. 16 at 13; D.I. 21 at 3.
[64] D.I. 16 at 13.
[65] *Id.*
[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] *Id.*
[70] *Id.*
[71] *Id.*

## 2. Vocational Expert's Testimony

Testimony was provided at the hearing by vocational expert, Christina Cody.[72] The ALJ proposed hypothetical question limiting plaintiff to unskilled work, reasoning level at one or two, no ability to speak and read or write in English, no more than occasional interaction with co-workers and supervisors, no interaction with the general public, and no exposure to moving machinery. Ms. Cody identified several occupations existed for such an individual including hand packager at the medium exertional level, laborer, and kitchen helper.[73] In another hypothetical, the ALJ included an individual who was unable to leave his home unaccompanied because of mental defect or mental impairments. In response, Ms. Cody explained there was no competitive employment.[74]

Plaintiff's counsel asked Ms. Cody several questions, specifically if an individual had difficulty making independent judgment and remembering work-like procedures, the impact these conditions would have on the person's ability to work.[75] Ms. Cody responded it would be work preclusive.[76] She further explained that the absence of one day per month from work on a reoccurring basis would be considered excessive by employers.[77] Plaintiff's counsel also asked if an individual had difficulty in all abilities and aptitudes needed to do unskilled work, whether it would preclude him from doing any type of unskilled work.[78] Ms. Cody responded that it would preclude work.[79]

---

[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] *Id.*

### 3. The ALJ's Findings

Based on the medical evidence and testimony provided in the 2015 hearing, the ALJ determined plaintiff was not disabled, and therefore, ineligible for Social Security Disability Insurance benefits and Supplemental Security Income.  The ALJ's findings from the 2015 hearing, the disability decision at issue, are summarized as follows:

1.      The claimant has not engaged in substantial gainful activity since October 31, 2012, the application date (20 CFR 416.971 et seq.).

2.      The claimant has the following severe impairments: borderline intelligence/borderline intellectual functioning, depression and schizoaffective disorder (20 CFR 416.920(c)).

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.      After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  unskilled work, no more than reasoning level two; no requirement to read, speak, or understand English to perform the work; no work at exposed heights; no working around moving machinery; no interaction with the general public; and no more than occasional interaction with coworkers and supervisors.

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on September 5, 1986 and was 26 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the

claimant does not have past relevant work (20 CFR 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, from October 31, 2012, the date the application was filed (20 CFR 416.920(g)).[80]

## III.    STANDARD OF REVIEW

### A.    Motion for Summary Judgment

Each party moved for summary judgment.[81]  In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[82]  If there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[83]

This standard does not change merely because there are cross-motions for summary judgment.[84]  Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and

---

[80] D.I. 8-2 at 23-34.

[81] D.I. 10 (Plaintiff's motion for summary judgment); D.I. 14 (Defendant's motion for summary judgment).

[82] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).

[83] *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting FED. R. CIV. P. 56(c)).

[84] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

determination whether genuine issues of material fact exist.[85]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[86]

### B.    Court's Review of the ALJ's Findings

Section 405(g) sets forth the standard of review of the ALJ's decision by the district court.  The court may reverse the Commissioner's final determination only if the ALJ did not apply the proper legal standards, or the record did not include substantial evidence to support the ALJ's decision.  The Commissioner's factual decisions are upheld if supported by substantial evidence.[87]  Substantial evidence means less than a preponderance of the evidence, but more than a mere scintilla of evidence.[88]  As the United States Supreme Court has found, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[89]

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.[90]  The court's review is limited to the evidence that was actually presented to the ALJ.[91]  The Third Circuit has explained that a:

---

[85] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

[86] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).

[87] 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Medical Center v. Heckle*, 806 F .2d 1185, 1190 (3d Cir. 1986).

[88] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

[89] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[90] *Monsour*, 806 F.2d at 1190.

[91] *Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001)

> single piece of evidence will not satisfy the substantiality test if the
> [Commissioner] ignores, or fails to resolve, a conflict created by
> countervailing evidence. Nor is evidence substantial if it is
> overwhelmed by other evidence, particularly certain types of
> evidence (e.g., evidence offered by treating physicians) or if it really
> constitutes not evidence but mere conclusion.[92]

Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable.[93] Even if the court would have decided the case differently, it must defer to the ALJ and affirm the Commissioner's decision so long as that decision is supported by substantial evidence.[94]

Where "review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision."[95] In *Securities & Exchange Commission v. Chenery Corp.*, the Supreme Court found that a "reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."[96] The Third Circuit has recognized the applicability of this finding in the Social Security disability context.[97] Thus, this court's review is limited to the four corners of the ALJ's

---

[92] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).
[93] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).
[94] *Monsour*, 806 F .2d at 1190-91.
[95] *Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).
[96] *Sec. & Exch. Comm'n v. Chenery Corp.,* 332 U.S. 194, 196 (1947).
[97] *Fargnoli v. Massanari*, 247 F.3d 34, 44, n.7 (3d Cir. 2001).

decision.[98]

### C.    ALJ's Disability Determination Standard

The Supplemental Social Security Income (SSI) program was enacted in 1972 to assist "individuals who have attained the age of 65 or are blind or disabled" by setting a minimum income level for qualified individuals.[99]  A claimant – in order to establish SSI eligibility – bears the burden of proving that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of or not less than twelve months."[100]  Moreover, "the physical or mental impairment or impairments must be of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in significant numbers in the national economy."[101]  Furthermore, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are evidenced by medically acceptable clinical and laboratory diagnostic techniques.[102]

---

[98] *Cefalu v. Barnhart*, 387 F. Supp.2d 486, 491 (W.D. Pa. 2005).
[99] *Sullivan v. Zebley*, 493 U.S. 521, 524 (1990) (citing 42 U.S.C. § 1381 (1982 ed.)).
[100] 42 U.S.C. § 423(d)(1)(A).
[101] 42 U.S.C. § 423(d)(2)(A).
[102] 42 U.S.C. § 423(d)(3).

## 1.    Five-Step Test.

The Social Security Administration uses a five-step sequential claim evaluation process to determine whether an individual is disabled.[103]

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity.  If a claimant is found to be engaged in substantial activity, the disability claim will be denied.
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.  In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work.  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.  Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work.  The claimant bears the burden of demonstrating an inability to return to her past relevant work.  If the claimant is unable to resume her former occupation, the evaluation moves to the final step.

> At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability.  The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.  The ALJ will often seek the assistance of a vocational expert at this fifth step.[104]

If the ALJ determines that a claimant is disabled at any step in the sequence, the analysis ends.[105]

---

[103] 20 C.F.R. §416.920(a); *see also Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999).
[104] *Plummer*, 186 F.3d at 427.
[105] 20 C.F.R § 404.1520(a)

## 2.     Weight Afforded Treating Physicians

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight."[106]  Moreover, such reports will be given controlling weight where a treating source's opinion on the nature and severity of a claimant's impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence on record.[107]

The ALJ must consider medical findings supporting the treating physician's opinion that the claimant is disabled.[108]  If the ALJ rejects the treating physician's assessment, he may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence."[109]  If an opinion is rejected, then the ALJ must provide an explanation for the rejection.  However, the explanation need not be exhaustive, but rather "in most cases, a sentence or short paragraph would probably suffice."[110]

However, a statement by a treating source that a claimant is "disabled" is not a medical opinion; rather, it is an opinion on an issue reserved to the ALJ because it is a finding that is dispositive of the case.[111]  Therefore, only the ALJ can make a disability determination.

---

[106] *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)
[107] *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001).
[108] *Morales*, 225 F.3d at 317 (citing *Plummer*, 186 F.3d at 429).
[109] *Plummer*, 186 F.3d at 429.
[110] *Cotter v. Harris,* 650 F.2d 481, 482 (3d Cir. 1981).
[111] *See* 20 C.F.R. § 416.927 (e)(1).

### 3.    Evaluation of Subjective Accounts of Pain[112]

Statements about the symptoms alone never establish the existence of any impairment or disability.[113] The Social Security Administration uses a two-step process to evaluate existence and severity of symptoms.

### a.    Existence of Pain

First, the ALJ must find a medically determinable impairment – proven with medically acceptable clinical and laboratory diagnostic data – that could reasonably be expected to produce the claimant's symptoms. Otherwise, the ALJ cannot find the applicant disabled, no matter how genuine the symptoms appear to be.

This step does not consider the intensity, persistence, and limiting effects of the symptoms on the claimant: it only verifies whether a medical condition exists that could objectively cause the existence of the symptom.

Analysis stops at this step where the objectively determinable impairment meets or medically equals one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, because the claimant is considered disabled *per se.*

### b.    Severity of Pain

At step two, the ALJ must determine the extent to which the symptoms limit the claimant's ability to do basic work activities. At this step, the ALJ must consider the

---

[112] *See* 20 C.F.R §§ 416.928-29; *see also* SSR 96-7p.
[113] A symptom is an individual's own description of physical or mental impairments such as pain, fatigue, shortness of breath and other complaints. *see* SSR 96-7p.

entire record, including medical signs, laboratory findings, the claimant's statements about symptoms, any other information provided by treating or examining physicians and psychologists, and any other relevant  evidence in the record, such as the claimant's account of how the symptoms affect his activities of daily living and ability to work.[114]

Where more information is needed to assess a claimant's credibility, the ALJ must make every reasonable effort to obtain available information that would shed light on this issue.  Therefore, the ALJ must consider the following factors relevant to symptoms, only when such additional information is needed:

(i)  The applicants' account of daily activities;

(ii)  The location, duration, frequency, and intensity of pain or other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication the applicant takes or has taken to alleviate pain or other symptoms;

(v)  Treatment, other than medication, the applicant receives or has received for relief of pain or other symptoms;

(vi)  Any measures the applicant uses or has used to relieve pain or other symptoms (e.g., lying flat, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning functional limitations and restrictions due to pain or

---

[114] 20 C.F.R. § 404.1529.

other symptoms.[115]

### 4.　　Factors in Evaluating Credibility[116]

A claimant's statements and reports from medical sources and other persons with regard to the seven factors, noted above, along with any other relevant information in the record, provide the ALJ with an overview of the subjective complaints, and are elements to the determination of credibility.

Consistency with the record, particularly medical findings, supports a claimant's credibility.  Since the effects of symptoms can often be clinically observed, when present, they tend to lend credibility to a claimant's allegations.  Therefore, the adjudicator should review and consider any available objective medical evidence concerning the intensity and persistence of pain or other symptoms in evaluating the claimant's statements.

Persistent attempts to obtain pain relief, increasing medications, trials of different types of treatment, referrals to specialists, or changing treatment sources may indicate that the symptoms are a source of distress and generally support a claimant's allegations.  An applicant's claims, however, may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show noncompliance with prescribed treatment.

Findings of fact by state agency medical and psychological consultants and other physicians and psychologists regarding the existence and severity of impairments and

---

[115] 20 C.F.R. § 404.1529
[116] SSR 16-3p.

symptoms, and opinions of non-examining physicians and psychologist are also part of the analysis. Such opinions are not given controlling weight. However, the ALJ, although not bound by such findings, may not ignore them and must explain the weight afforded those opinions in his decision.

Credibility is one element in determining disability. The ALJ must apply his finding on credibility in step two of the five-step disability determination process, and may use it at each subsequent step.

The decision must clearly explain – provide sufficiently specific reasons based on the record – to the claimant and any subsequent reviewers, the weight afforded to the claimant's statements and the reasons therefore.

The law recognizes that the claimant's work history should be considered when evaluating the credibility of his testimony or statements.[117] A claimant's testimony is accorded substantial credibility when he has a long work history, which demonstrates it is unlikely that, absent pain, he would have ended employment.[118]

### 5. Medical Expert Testimony

The onset date of disability is determined from the medical records and reports and other similar evidence, which requires the ALJ to apply informed judgment.[119] "At

---

[117] 20 C.F.R. § 404.1529(a)(3)

[118] *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984)(citing *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981)). In *Podedworny*, the claimant worked for thirty-two years as a crane operator for one company. He had a ninth grade education and left his employment after the company physicians determined that his symptoms of dizziness and blurred vision prevented him from safely performing his job.

[119] SSR 83-20.

the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred."[120]

## IV.    DISCUSSION

### A.    Parties' Contentions

Plaintiff argues the ALJ erred in his analysis of whether plaintiff's mental health impairments met or medically equaled one of the listed impairments by ignoring relevant medical evidence and failing to provide an adequate explanation for some of his findings.[121]  Plaintiff maintains, in making his assessment, the ALJ ignored relevant evidence that supported the severity of plaintiff's schizoaffective disorder and cognitive dysfunction.[122]  Plaintiff asserts the ALJ disregarded substantial amounts of evidence that supported the marked severity of his mental impairments.[123]

The ALJ found plaintiff had moderate restrictions in his activities of daily living ("ADLs"), but the plaintiff argues he had significant restrictions in his ability to perform ADLs.[124]  Plaintiff contends the ALJ ignored significant portions of the evidence, which revealed severe deficits in social functioning.[125]  Plaintiff further maintains there was evidence in the record demonstrating he has significant concentration problems that were marked in nature, and a significant portion of the evidence was not addressed by

---

[120] *Id.*
[121] D.I. 16 at 14.
[122] *Id.* at 15.
[123] *Id.*
[124] *Id.* at 16.
[125] *Id.* at 17.

the ALJ.[126]  Plaintiff argues the ALJ summarily concluded he did not have a current history of one or more years of an inability to function outside a highly supportive living arrangement, with a continued need for such arrangement, and the ALJ failed to provide an explanation for this finding.[127]

Further, plaintiff contends the ALJ erred as a matter of law in failing to accord adequate weight to the opinions and assessments of plaintiff's treating psychologist, Dr. Gloria Crespo.[128]  Plaintiff argues the ALJ disregarded repeated references of disabling symptoms.[129]  Plaintiff contends Dr. Crespo's opinion is consistent with three other treating medical providers including Gloria Diaz, Kurt Rodriguez, LCSW, and Dr. Migueline Grant Gonzalez, and the ALJ discredited their opinions based upon the one-time exam done by Mr. Kurz, who was not a treating provider.[130]

Alternatively, defendant contends substantial evidence supports the ALJ's decision.[131]  Defendant argues the ALJ properly evaluated the competing medical opinion evidence.[132]  Defendant asserts the ALJ provided legitimate reasons to grant little weight to Dr. Crespo's opinions and substantial evidence supported his determination.[133]  Defendant argues the reasons cited by the ALJ fully conformed to the governing regulations, which provide more weight will be given to medical opinions

---

[126] *Id.* at 18.
[127] *Id.*
[128] *Id.* at 19.
[129] *Id.*
[130] *Id.* at 20.
[131] D.I. 21 at 4.
[132] *Id.* at 5.
[133] *Id.* at 6.

depending on the nature and length of the treatment relationship, the opinion's supportability, and its consistency with the record as a whole.[134]

Defendant further contends the ALJ did not err in concluding plaintiff's impairments did not meet or medically equal in severity the clinical requirements of listings.[135] Defendant asserts based on the evidence showing the effectiveness of plaintiff's treatment, the ALJ did not find plaintiff had marked or extreme difficulties in this domain.[136] Defendant argues that the ALJ did not err in his consideration of the paragraph C criteria of Listings because the ALJ cited this criteria and found the evidence failed to establish its presence.[137] Defendant further argues the ALJ was required to consider, and entitled to rely upon, the opinions of Drs. Tucker Okine and King in formulating his RFC finding because such state agency consultants are highly qualified psychologists who are experts in Social Security disability evaluation.[138]

Defendant contends the ALJ was not mandated by SSR 06-3p to explicitly weigh the statements of the claimant's mother, and does not require that ALJs explain weight given to sources other than "acceptable medical sources" and "non-medical sources" evaluating a claimant in their professional capacity.[139] Defendant contends a review of the entirety of the ALJ's decision illustrates that the record supports his finding that plaintiff's impairments did not equal Listings 12.02, 12.03, 12.04, 12.05, or 12.06.[140]

---

[134] *Id.* at 9.
[135] *Id.* at 10.
[136] *Id.* at 11.
[137] *Id.* at 12.
[138] *Id.* at 13.
[139] *Id.*
[140] *Id.* at 14.

Defendant argues the ALJ's decision meets the test for meaningful judicial review and substantive evidence supports the ALJ's finding that plaintiff's impairments were not severe enough to equal the clinical requirements of any Listed Impairment.[141]

**B.    Disability Analysis**

Title II of the Social Security Act, 42 U.S.C. § 423(a)(I)(D), "provides for the payment of insurance benefits" to those who contributed to the program and suffer from a physical or mental disability.[142]  In order to qualify for disability insurance benefits, a claimant must establish he was disabled prior to the date he was last insured.[143]  A "disability" is defined as the inability to do any substantial gainful activity because of any medically determinable physical or mental impairment, which either could result in death or has lasted or can be expected to last for a continuous period of at least 12 months.[144] To be disabled, the severity of the impairment must prevent return to previous work, and considering age, education, and work experience, restrict "any other kind of substantial gainful work which exists in the national economy."[145]

As explained previously herein, in determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis.[146]  If a finding of disability or non-disability can be made at any point in the sequential process, the

---

[141] *Id.*
[142] *Bowen*, 482 U.S. at 140.
[143] 20 C.F.R. § 404.131.
[144] 42 U.S.C. §§ 423(d)(I)(A), 1382(c)(a)(3).
[145] 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).
[146] 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422,427-28 (3d Cir. 1999).

Commissioner does not review the claim further.[147]  Initially, the Commissioner

determines whether the claimant is engaged in any substantial gainful activity, and if the

claimant is so engaged, a finding of non-disabled is required.[148]  If the claimant is not so

engaged, step two requires the Commissioner to determine whether the claimant is

suffering from a severe impairment or a combination of impairments that is severe.  If

the claimant is not suffering from either, a finding of non-disabled is required.[149]

If the claimant's impairments are severe, the Commissioner, at the third step.

compares the claimant's impairments to a list of impairments (the "listings") that are

presumed severe enough to preclude any gainful work.[150]  When a claimant's

impairment or its equivalent matches an impairment in the listing, the claimant is

presumed disabled.[151]  If a claimant's impairments, either singularly or in combination,

fail to meet or medically equal any listing, the analysis continues to step four and five.[152]

At step four, the Commissioner determines whether the claimant retains the RFC to

perform his past relevant work.[153]  A claimant's RFC is "that which an individual is still

able to do despite the limitations caused by [his] impairment(s)."[154]  "The claimant bears

the burden of demonstrating an inability to return to [his] past relevant work."[155]

If the claimant is unable to return to his past relevant work, step five requires the

---

[147] 20 C.F.R. § 404.1520(a)(4).
[148] 20 C.F.R. § 404.1520(a)(4)(i).
[149] 20 C.F.R. § 404.1520(a)(4)(ii).
[150] 20 C.F.R. § 404.1520(a)(4)(iii); *see also Plummer*, 186 F.3d at 428.
[151] 20 C.F.R. § 404.1520(a)(4)(iii).
[152] 20 C.F.R. § 404.1520(e).
[153] 20 C.F.R. § 404.1520(a)(4)(iv); *see also Plummer*, 186 F.3d at 428.
[154] *Fargnoli*, 247 F.3d at 40.
[155] *Plummer*, 186 F.3d at 428.

Commissioner to determine whether the claimant's impairments preclude adjusting to any other available work.[156]  At this final step, the burden is on the Commissioner to show the claimant is capable of performing other available work existing in significant national numbers and consistent with the claimant's medical impairments, age, education, past work experience, and RFC before denying disability benefits.[157]  In making this determination, the ALJ must analyze the cumulative effect of all the claimant's impairments and often seeks the assistance of a vocational expert.

### 1.    Weight Accorded to Medical Opinion Evidence

It is the exclusive responsibility of the ALJ to weigh the evidence in the record as a whole in making a disability decision.[158]  The evidence presented to the ALJ may contain differing medical opinions from both treating and non-treating physicians, as well as other testimony.[159]  Normally, the evidence presented by the treating physician is given controlling weight as that individual may be most acquainted with the medical history of the claimant.  However, in circumstances where the treating physician's opinion is not consistent with the record as a whole or is not well supported by "medically acceptable clinical and laboratory diagnostic techniques", an ALJ may reasonably accord little weight to the treating physician's opinion.[160]  Plaintiff argues that the ALJ failed to properly weigh the medical opinion from treating psychologist Dr.

---

[156] 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when claimant can adjust to other work); *see also Plummer*, 186 F.3d at 428.
[157] *Id.*
[158] See 20 CFR 404.1527(e)(2).
[159] See 20 CFR 404.1512.
[160] See 20 CFR 404.1527(c).

Gloria Crespo. This court finds that the proper weight was given to Dr. Crespo's medical opinion, and the evidence supports this decision.

### a. Dr. Gloria Crespo and Dr. Migueline M. Grant Gonzalez

The ALJ assigned little weight to the opinion of treating psychologist Dr. Crespo.[161] Dr. Crespo concluded that plaintiff had "marked" limitations with respect to ADLs, social functioning, and maintaining concentration, persistence, or pace.[162] In her medical judgment, plaintiff is unable to function outside of his home and/or a highly supportive living environment.[163] Plaintiff argues Dr. Crespo's opinion is supported by her treatment notes and the records of Dr. Lifrak and Gloria Diaz.[164] The ALJ also considered the opinion of the plaintiff's previous treating physician, Dr. Migueline M. Grant Gonzalez.[165] Dr. Gonzalez stated that plaintiff is totally disabled to carry out ADLs and completely limited in his daily routine.[166] The ALJ also assigned little weight to Dr. Gonzalez's statements.[167] Ultimately, the ALJ found that claimant had moderate restrictions in ADLs.[168]

The ALJ noted that the claimant's mother, Carolina Virola-Ruiz, completed a function report in connection with his claim.[169] In the report, his mother stated that she

---

[161] D.I. 8-2 at 24.
[162] *Id.*
[163] *Id.*
[164] D.I. 16 at 19.
[165] D.I. 8-2 at 24.
[166] *Id.*
[167] *Id.*
[168] *Id.* at 25.
[169] *Id.*

helps claimant with grooming and prepares his meals.[170]  She also reported that the claimant was "lazy."[171]  During the day, she indicated that he watches television and plays video games.[172]  While the claimant's mother reported supervising all major ADLs including transportation, finances, and health, the record reflects that he retains the "[a]bility to manage checkbook."[173]  The claimant also felt helpless about not being able to help his mother obtain housing and wanted to "move to another state to see if he can get better services."[174]

In addition, the ALJ  found that claimant had moderate difficulties in social functioning.[175]  Although the ALJ considered claimant's documented paranoia and agitation, the medical evidence reveals improvement with medication[176]  Further, the claimant was passively cooperative, had fair impulse control, and displayed no evidence of agitation or manic symptoms upon examination.[177]  Other treatment providers described the claimant as calm, cooperative, pleasant, friendly, and verbal.[178]

The ALJ also found that claimant had moderate difficulties in concentration, persistence, and pace.[179]  The claimant's mother reported that he can pay attention for five minutes.[180]  However, the medical evidence reveals improvement with medication

---

[170] *Id.*
[171] *Id.*
[172] *Id.*
[173] *Id.*
[174] *Id.*
[175] *Id.*
[176] *Id.*
[177] *Id.*
[178] *Id.*
[179] *Id.*
[180] *Id.*

with his memory intact and fair insight and judgement.[181]  Further, mental status examination findings repeatedly describe the claimant as alert, oriented, and cooperative.[182]

Accordingly, the ALJ noted Dr. Crespo's conclusions are inconsistent with the evidence in the record and plaintiff's level of activity, and assigned little weight to Dr. Gonzalez's findings because they are conclusory, and unsupported by the medical records.[183]

### b. Carlene Tucker-Okine, Ph. D., and Christopher King, Psy.D.,

Plaintiff's records were reviewed by state agency psychological consultants, Carlene Tucker-Okine, Ph. D., and Christopher King, Psy.D.[184]  Dr. Tucker-Okine opined that plaintiff was moderately limited in multiple areas, including his ability to understand and remember detailed instructions, maintain attention and concentration, complete a normal workday and work week without interruptions from psychologically based symptoms and set realistic goals.[185]  Ultimately, Dr. Tucker-Okine concluded that plaintiff has only mild limitations in ADLs and maintaining social function, and moderate difficulties in concentration, persistence, or pace.[186]  Thereafter,  Dr. King reviewed plaintiff's records and affirmed Dr. Tucker-Okine's findings.[187]

---

[181] *Id.*
[182] *Id.*
[183] D.I. 8-2 at 24.
[184] D.I. 16 at 12.
[185] *Id.*
[186] D.I. 8-2 at 24.
[187] D.I. 16 at 12.

The ALJ considered both consultants' opinions and assigned some weight to their opinions.[188]  The ALJ assigned partial weight to the opinions of the consultants because their conclusions as to the claimant's ability to answer questions, follow directions, handle simple tasks, and handle one to two step commands are consistent with the medical evidence in the record.[189]  This includes examination findings, documented improvement with medication, and the results of intelligence testing.[190]  However, as discussed above, the record reflects that the claimant does have some social limitations that have been appropriately accommodated for in the residual functional capacity below.[191]  Accordingly, the consultants' assessments were propoerly assigned partial weight.[192]

## 2.    RFC Assessment

Plaintiff alleges the ALJ failed to properly assess his residual functional capacity.[193]  An RFC is an individual's ability to perform in a work setting despite impairments and limitations.[194]  In making this finding, the ALJ must consider all of the claimant's impairments, including those that are non-severe.  Although the ALJ may weigh the credibility of the evidence, he must indicate the evidence which he rejects and his reason(s) for discounting such evidence.[195]

---

[188] D.I. 8-2 at 24-5.
[189] *Id.* at 32.
[190] *Id.*
[191] *Id.*
[192] *Id.*
[193] D.I. 16 at 21.
[194] 20 C.F.R. § 404.1545.
[195] *Plummer*, 186 F.3d at 429.

In the current matter, the ALJ found that plaintiff possessed the residual functioning capacity to perform a full range of work at all exertional levels.[196]  The ALJ, however, noted the following nonexertional limitations:  unskilled work, no more than reasoning level two; no requirement to read, speak, or understand English to perform the work; no work at exposed heights; no working around moving machinery; no interaction with the general public; and no more than occasional interaction with coworkers and supervisors.[197]  Furthermore, the ALJ specifically found plaintiff retains the ability to perform work within the parameters of the above residual functional capacity, which considered and accounted for his medically determinable impairments.[198]

## V.    CONCLUSION

Consistent with the findings contained herein:

1. Plaintiff's motion for summary judgment (D.I. 15) is denied; and

2. Defendant's motion for summary judgment (D.I. 20) is granted.

A Judgement Order shall follow.


Date: December 10, 2018

---

[196] D.I. 8-2 at 27.
[197] *Id.*
[198] D.I. 8-2 at 33.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JOSE A. VIROLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.  17-776-MPT |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**JUDGMENT ORDER**

At Wilmington this **10th** day of **December, 2018.**

IT IS ORDERED and ADJUDGED THAT:

1. Plaintiff's motion for summary judgment (D.I. 15 ) is DENIED.

2. Defendant's motion for summary judgment (D.I. 20) is GRANTED.


/s/ Mary Pat Thynge
Chief U.S. Magistrate Judge